UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VALENTIN KOMAROVSKIY,

                Plaintiff,

      v.

CELSIUS NETWORK LLC,
ALEXANDER MASHINSKY, and
SHLOMI "DANIEL" LEON,

                Defendants.

C.A. No. 4:23-cv-40067-MRG

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALEXANDER
MASHINSKY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

    A.   The Amended Complaint ................................................................................. 2

    B.   Celsius's Bankruptcy Proceedings and the UCC Complaint ........................... 3

    C.   Procedural History ......................................................................................... 4

ARGUMENT .......................................................................................................................... 5

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MASHINSKY .................... 5

    A.   There is No General Jurisdiction ..................................................................... 5

    B.   There is No Specific Jurisdiction ..................................................................... 6

II.   PLAINTIFF LACKS STANDING TO ASSERT HIS CLAIMS BECAUSE THEY ARE
     DERIVATIVE OF CELSIUS'S CLAIMS IN THE BANKRUPTCY PROCEEDINGS ....... 8

III.  PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AS TO ANY OF HIS CLAIMS
     AGAINST MASHINSKY ............................................................................................ 10

    A.   Plaintiff Fails to State a Claim for Unjust Enrichment .................................... 11

    B.   Plaintiff Fails to State a Claim for Conversion ............................................... 12

    C.   Plaintiff Fails to State a Claim for Tortious Interference with Contract ........... 13

    D.   Plaintiff Fails to State a Claim for Fraud and Misrepresentation .................... 14

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

Cases                                                                                  Page(s)

*Adelson v. Hananel*,
  510 F.3d 43 (1st Cir. 2007)........................................................................................ 8

*Arbogast v. Pfizer*,
  2023 WL 1864295 .................................................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 11

*Barkhordar v. Pres. & Fellows of Harvard Coll.*,
  544 F. Supp. 3d 203 (D. Mass. 2021).................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 11

*Biltcliffe v. CitiMortgage, Inc.*,
  952 F. Supp. 2d 371 (D. Mass. 2013).................................................................... 11

*Biltcliffe v. CitiMortgage, Inc.*,
  772 F.3d 925 (1st Cir. 2014) ................................................................................. 11

*Blake v. Prof'l Coin Grading Serv.*,
  898 F. Supp. 2d 365 (D. Mass. 2012).................................................................... 13

*Catarius v. Carton*,
  100 Mass. App. Ct. 1130 (2022) ........................................................................... 11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................. 5

*DiStefano v. Stern*,
  223 B.R. 610 (Bankr. D. Mass. 1998) ..................................................................... 9

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................... 15

*Eissa v. Ledvance LLC*,
  2022 WL 3446037 (D. Mass. Aug. 17, 2022) ........................................................ 14

*Equip. & Sys. for Indus., Inc. v. Northmeadows Const. Co.*,
  59 Mass. App. Ct. 931 (2003) ............................................................................... 11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) .................................................................................................... 5

*Grice v. VIM Holdings Group, LLC*,
   280 F. Supp. 3d 258 (D. Mass. 2017) ........................................................................ 6

*Harrison v. NetCentric Corp.*,
   433 Mass. 465 (2001) ................................................................................................ 14

*Hosseini v. Capital One, N.A.*,
   217 F. Supp. 3d 441 (D. Mass. 2016) ................................................................. 11, 15

*In re Am. Cartage, Inc.*,
   438 B.R. 1 (Bankr. D. Mass. 2010) ............................................................................ 9

*In re Celsius Network LLC*,
   647 B.R. 631 (Bankr. S.D.N.Y. 2023) ...................................................................... 13

*In re Celsius Network LLC, et al.*
   No. 22-10964-mg (S.D.N.Y. Mar. 30, 2023) ............................................................ 4

*In re Soares*,
   107 F.3d 969 (1st Cir. 1997) ...................................................................................... 9

*In re TelexFree, LLC*,
   941 F.3d 576 (1st Cir. 2019) ...................................................................................... 9

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .................................................................................................... 5

*Karter v. Pleasant View Gardens, Inc.*,
   248 F. Supp. 3d 299 (D. Mass. 2017) ...................................................................... 13

*Kowalski v. Doherty, Wallace, Pillsbury & Murphy*,
   787 F.2d 7 (1st Cir. 1986) .......................................................................................... 7

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
   142 F.3d 26 .................................................................................................................. 7

*McNutt v. General Motors Acceptance Corp.*,
   298 U.S. 178 (1936) .................................................................................................... 5

*Miller v. CitiMortgage, Inc.*,
   457 F. Supp. 3d 13, 16 (D. Mass. 2020) .................................................................. 12

*Miller Inv. Trust v. Morgan Stanley & Co., LLC*,
   308 F. Supp. 3d 411 (D. Mass. 2018) ............................................................. 15

*Mojtabai v. Mojtabai*,
   4 F.4th 77 (1st Cir. 2021) ........................................................................... 5, 6

*Motus, LLC v. CarData Consultants Inc.*,
   520 F. Supp. 3d 87 (D. Mass. 2021) ............................................................... 5

*O'Donnell v. Boggs*,
   611 F.3d 50 (1st Cir. 2010) ............................................................................ 14

*Omori v. Brandeis Univ.*,
   533 F. Supp. 3d 49 (D. Mass. 2021) ............................................................... 12

*Ox Labs, Inc. v. BitPay, Inc.*,
   848 F. App'x 795 (9th Cir. 2021) .................................................................... 13

*Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*,
   407 F. Supp. 3d 59 (D. Mass. 2019) ............................................................... 12

*Pritzker v. Yari*,
   42 F.3d 53 (1st Cir. 1994) ............................................................................... 7

*Putluri v. FSSI Acquisition, Inc.*,
   2022 WL 15523410 (D. Mass. Oct. 27, 2022) ................................................ 14

*Sawtelle v. Farrell*,
   70 F.3d 1381 (1st Dep't 1995) ..................................................................... 5, 8

*Suski v. Marden-Kane, Inc.*,
   2022 WL 3974259 (N.D. Cal. Aug. 31, 2022) ................................................ 13

*Ticketmaster-N.Y., Inc. v. Alioto*,
   26 F.3d 201 (1st Cir. 1994) .............................................................................. 6

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
   960 F.2d 1080 (1st Cir. 1992) ...................................................................... 7, 8

*Unum Grp. v. Loftus*,
   220 F. Supp. 3d 143 (D. Mass. 2016) ............................................................. 12

*Willis v. Ocwen Fin. Corp.*,
   2022 WL 1805441 (D. Mass. Jun. 2, 2022) ..................................................... 15

Statutes

11 U.S.C. § 541(a)(1) ................................................................................................................ 9

Section 362 of the Bankruptcy Code ........................................................................................ 8

Section 362(a) of the Bankruptcy Code .................................................................................... 3

Rules

Mass. R. Civ. P. 9(b) .............................................................................................................. 11

Defendant Alexander Mashinsky ("Mashinsky") respectfully submits this memorandum of law in support of his motion to dismiss plaintiff Valentin Komarovskiy's ("Plaintiff") amended Verified Complaint (the "Amended Complaint") pursuant to Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, Rule 12(b)(6) for failure to state a claim (the "Motion").

## PRELIMINARY STATEMENT

Plaintiff's five-page Amended Complaint seeks to hold Mashinsky—a New York resident over whom this Court does not have jurisdiction and the former CEO of Celsius Network, LLC ("Celsius"), a Delaware company currently in bankruptcy proceedings in New York—personally liable for Plaintiff's present inability to access his cryptocurrency assets deposited with Celsius due to the automatic bankruptcy stay.

Celsius's primary business was to provide holders of cryptocurrency assets a place to deposit their assets and earn rewards on their deposits. Celsius grew rapidly after its launch in 2018. At its peak, Celsius held over $24 billion in assets and had over 850 employees. In the approximately four years that it operated, Celsius paid out more than $1 billion to its users and generated a community of loyal followers. In May 2022, however, circumstances outside of Mashinsky's (and Celsius's) control led to a liquidity squeeze, which, in turn, ultimately led to a pause on customer withdrawals in June 2022 (the "Pause") and Celsius's commencement of Chapter 11 bankruptcy proceedings in July 2022. The bankruptcy proceedings are ongoing before Chief Judge Glenn in the Southern District of New York. Thousands of Celsius customers are unable to withdraw their deposits from Celsius's platform while the bankruptcy proceedings are underway. Those customers, including Plaintiff, are represented in the bankruptcy by the Official Committee of Unsecured Creditors (the "UCC").

Plaintiff alleges that he is one of the Celsius customers whose assets were subject to the Pause. The Amended Complaint asserts claims against Celsius, Mashinsky, and Shlomi "Daniel"

Leon, the former Chief Strategic Officer of Celsius. With respect to Mashinsky, Plaintiff makes only bare, conclusory allegations that Plaintiff suffered some unspecified loss due to alleged unidentified misrepresentations by Mashinsky and Mashinsky's supposed interference with phantom contracts. Based on those insufficient allegations, Plaintiff asserts causes of action against Mashinsky for unjust enrichment, conversion, tortious interference, and fraud and misrepresentation. As set forth herein, this Court should dismiss Plaintiff's Amended Complaint on the grounds that this Court lacks personal jurisdiction over Mashinsky; Plaintiff lacks standing to assert his claims; or, in the alternative, Plaintiff has failed to state a claim against Mashinsky.

First, the Amended Complaint must be dismissed for the fundamental reason that this Court lacks personal jurisdiction over Mashinsky, a non-resident of Massachusetts who has no contacts with the forum.

Second, Plaintiff lacks individual standing to assert his claims because they are derivative of those belonging to Celsius's bankruptcy estate, and the bankruptcy Court has granted the UCC sole authority to assert such claims.

Third, in the alternative, the bare-bones allegations in the Amended Complaint fail to satisfy the elements necessary to state any of the claims asserted against Mashinsky under Massachusetts law.

## BACKGROUND[1]

### A.  The Amended Complaint

Mashinsky, a New York resident, co-founded Celsius, a Delaware company, in 2017 and served as its CEO from its inception until his resignation on September 27, 2022. (*See* Amended

---

[1] Although Mashinsky disputes the veracity of the allegations in the Amended Complaint, he accepts them as true for purposes of this Motion.

Complaint ("Am. Compl.") ¶ 8.) Celsius's primary business was to offer a platform via a website and a mobile app that allowed customers to deposit their crypto assets into an account (an "Earn Account") with Celsius and earn rewards on those deposits. (*See id*. ¶ 5.) Celsius grew rapidly in the years following its launch. Prior to its bankruptcy, Celsius held over $4 billion in assets and had many hundreds of employees. (*See id*. ¶ 7.)

The Amended Complaint alleges that on or about June 12, 2022, "the defendant[2] unilaterally 'paused''paused' any withdrawals, effectively depriving the plaintiff of his funds." (*Id*. ¶ 14.)   The Amended Complaint further alleges that Mashinsky "withdrew 10 million in cryptocurrency" prior to the Pause, and that "[w]hile [Mashinsky was] making these withdrawals, [Mashinsky] continued to mispresent [sic] the true condition of the company right up to the pause." (*Id*. ¶¶ 17-19.) Plaintiff alleges that he "reasonably relied on these representations to his detriment, and did not withdraw his funds." (*Id*. ¶ 37.) According to the Amended Complaint, Plaintiff's assets on deposit at Celsius have a combined market value of $478,010.92. (*Id*. ¶ 13.)

### B. Celsius's Bankruptcy Proceedings and the UCC Complaint

Approximately one month after implementing the Pause, on July 13, 2022, Celsius filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. That filing triggered an automatic stay under Section 362(a) of the Bankruptcy Code, prohibiting creditors from commencing or continuing any proceedings against Celsius or property of the estate, and from seeking to obtain property of the estate. *See* 11 U.S.C. § 362(a).

Particularly relevant for purposes of this Motion, the bankruptcy court has designated the UCC as the sole entity entitled to pursue certain claims belonging to Celsius's bankruptcy estate

---

[2] The Complaint does not specify whether "the defendant" refers to Mashinsky, Leon, or Celsius.

against Mashinsky and certain other former officers and employees of Celsius through a trust to be established in connection with any reorganization plan for Celsius (the "Litigation Trust"). Plaintiff is precluded from bringing his claims here because they are derivative of the claims transferred to the UCC in the bankruptcy, and the UCC was granted standing to assert those claims on behalf of Celsius. In connection with that grant of authority, the UCC filed a 124-page proposed complaint (the "UCC Complaint")[3] asserting, "derivatively on behalf of and as the representative of the Debtors' estates[,]" more than thirty causes of action against Mashinsky and others, including for breach of fiduciary duty and alleged preferential and fraudulent transfers. The UCC Complaint alleges that Mashinsky made misrepresentations to Celsius customers regarding the risk of Celsius's investments, its regulatory compliance, and its financial strength in an effort to entice more customers to deposit their assets with Celsius. (UCC Compl. ¶¶ 4-5, 11)..) The UCC Complaint further alleges that the "reckless and self-interested conduct" of Mashinsky and others "has left hundreds of thousands of holders without access to the crypto assets they transferred to the Defendants to safeguard and manage." (*Id*. ¶ 16)..)

### C. Procedural History

On June 22, 2022, Plaintiff filed a complaint against Celsius in the Superior Court of Massachusetts, Worcester County. On December 9, 2022, Plaintiff filed a motion to amend his complaint, which, *inter alia*, added Mashinsky as a defendant. On April 11, 2023, the Superior Court issued an order allowing Plaintiff to file his amended complaint. Plaintiff filed an affidavit of service on May 26, 2023, which states that Mashinsky was served with the Amended Complaint on May 22, 2023. On June 9, 2023, Mashinsky removed the case to this Court.

---

[3] The Court may take judicial notice of the UCC Complaint, *In re Celsius Network LLC, et al.*, No. 22-10964-mg (S.D.N.Y. Mar. 30, 2023) (ECF No. 2349-1), for purposes of deciding this Motion. *See Arbogast v. Pfizer*, 2023 WL 1864295, at *2 n.1 ("The Court may take judicial notice of court filings in the resolution of a motion to dismiss."). A copy of the UCC Complaint is attached hereto as Exhibit A.

## ARGUMENT

### I.      THIS COURT LACKS PERSONAL JURISDICTION OVER MASHINSKY

The Amended Complaint should be dismissed because it fails to offer any basis for this Court to exercise personal jurisdiction over Mashinsky. "In order for Massachusetts to exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause requires that the defendant have sufficient minimum contacts with the state, such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 91 (D. Mass. 2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Compliance with the demands of due process may be shown on the basis of either general or specific jurisdiction." *Mojtabai v. Mojtabai*, 4 F.4th 77, 86 (1st Cir. 2021). "When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction lies in the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Dep't 1995) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

The Amended Complaint fails to articulate any basis for this Court to exercise either general or specific personal jurisdiction over Mashinsky, and therefore it must be dismissed as against him.

### A.  There is No General Jurisdiction

The Amended Complaint does not allege any facts that could support a finding that this Court has general jurisdiction over Mashinsky. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "[A] court may also assert general jurisdiction over an individual when the person offers explicit consent, . . . or is physically present in the forum state." *Grice v. VIM Holdings Group,*

*LLC*, 280 F. Supp. 3d 258, 269–70 (D. Mass. 2017) (citations omitted). The Amended Complaint alleges that Mashinsky is a resident of New York (Am. Compl. ¶ 3), and it does not allege that Mashinsky consented to jurisdiction in this forum or that Mashinsky has ever been physically present in Massachusetts. Therefore, this Court lacks general jurisdiction over Mashinsky.

### B.  There is No Specific Jurisdiction

Nor has Plaintiff satisfied his burden of pleading that the Court can exercise specific jurisdiction over Mashinsky. For the exercise of specific jurisdiction to comport with constitutional requirements, the Court must consider: "(1) whether the claims directly arise out of, or relate to, the defendants' forum-state activities; (2) whether the defendants' in-state contacts . . . represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendants' involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable." *Mojtabai*, 4 F.4th at 86. The Amended Complaint's allegations fail to satisfy any of those three prongs.

<u>First</u>, Plaintiff does not allege that the claims are related to any purported activity by Mashinsky in Massachusetts. The relatedness component focuses on the nexus between the defendant's contacts and the plaintiff's cause of action. *See Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). Here, the only alleged connection that this suit has to Massachusetts (other than Plaintiff's residence) is that Celsius allegedly had "thousands of customers in Massachusetts, including the plaintiff." (Am. Compl. ¶ 6.) Plaintiff does not allege that *any* of the conduct giving rise to the claims against Mashinsky occurred in Massachusetts, let alone that Mashinsky engaged in any such conduct in or directed to Massachusetts.

To the extent that Plaintiff alleges that the effects of Mashinsky's alleged conduct were felt by Plaintiff in Massachusetts, that is insufficient to constitute minimum contacts with this forum. *See, e.g.*, *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7 (1st Cir. 1986) (rejecting the plaintiff's contention that, because the effects of the defendant's negligence were felt in New Hampshire, the defendant had caused an injury there by conduct directed at that forum); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (holding that the Massachusetts effects of non-forum actions, without more, are insufficient to support personal jurisdiction). Therefore, the relatedness prong of specific jurisdiction is not satisfied.

Second, Mashinsky did not undertake any actions that could be construed as purposefully availing himself of the benefit of doing business in Massachusetts. An individual defendant's contacts must "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of [its] laws and making the defendant's involuntary presence before [a Massachusetts] court foreseeable." *Mass. Sch. of Law at Andover, Inc.*, 142 F.3d at 36 (quoting *Pritzker v. Yari*, 42 F.3d 53 (1st Cir. 1994)). The Amended Complaint utterly fails to allege that Mashinsky purposefully availed himself of the privilege of conducting activities in Massachusetts. At best, the Amended Complaint alleges that Mashinsky "exercised control" over an entity that had customers in Massachusetts. This is insufficient to satisfy the purposeful availment prong. *See United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1090-91 (1st Cir. 1992) (holding that there was insufficient evidence to find that foreign corporation purposefully availed itself of privilege of conducting activities in Massachusetts, and, thus, court lacked jurisdiction).

Third, the reasonableness requirement directs the court to consider the "gestalt factors," including the defendant's burden of appearing and the forum state's interest in adjudicating the

dispute. *Adelson v. Hananel*, 510 F.3d 43, 51 (1st Cir. 2007) (citing *United Elec., Radio & Mach. Workers of Am.*, 960 F.2d at 1088)). "[A] failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness: '[t]he [g]estalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.'" *Sawtelle*, 70 F.3d at 1394 (quoting *United Elec., Radio and Mach. Workers of Am.*, 960 F.2d at 1091 & n. 11). Because the Amended Complaint does not come close to alleging facts sufficient to support either of the first two prongs, this Court need not address the gestalt factors to conclude that it would be unreasonable to assert jurisdiction over Mashinsky.

For all of these reasons, the Amended Complaint does not survive constitutional scrutiny for the extension of personal jurisdiction over Mashinsky and must therefore be dismissed against him in its entirety.

## II.   PLAINTIFF LACKS STANDING TO ASSERT HIS CLAIMS BECAUSE THEY ARE DERIVATIVE OF CELSIUS'S CLAIMS IN THE BANKRUPTCY PROCEEDINGS

The Amended Complaint should also be dismissed because only the UCC has standing to bring the claims Plaintiff asserts in this litigation. The bankruptcy court designated the UCC as the sole entity able to assert claims belonging to Celsius's bankruptcy estate pursuant to the Litigation Trust. Because the claims Plaintiff asserts here do not allege any particularized harm to him, but rather generalized harm to the estate, they are derivative of Celsius's claims and may only be asserted by the UCC in the bankruptcy.

The filing of a bankruptcy petition triggers the protections of an automatic stay pursuant to Section 362 of the Bankruptcy Code, which "respite enables debtors to resolve their debts in a more orderly fashion, and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-

for-all in which opposing interests maneuver to capture the lion's share of the debtor's [property]." *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997).

Under the Bankruptcy Code, the debtor's property includes "all legal or equitable interests of the debtor in property as of the commencement of the case. This includes property wherever located and by whomever held, and both tangible or intangible property." *In re TelexFree, LLC*, 941 F.3d 576, 583–84, 587 (1st Cir. 2019) (citing 11 U.S.C. § 541(a)(1)). "An action seeking damages for harm to a corporation based on the prepetition conduct of its directors or managers becomes the property of the estate upon the filing of a bankruptcy petition." *DiStefano v. Stern (In re J.D.F. Enters.)*, 223 B.R. 610, 621 (Bankr. D. Mass. 1998); *see also In re Am. Cartage, Inc.*, 438 B.R. 1, 14 (Bankr. D. Mass. 2010) ("It is well-settled that the Trustee has exclusive standing to bring post-petition actions alleging harm to a debtor's estate."). Where a claim alleges general harm to the estate, the trustee (here, the UCC) is the exclusive party that may bring such an action, and "the creditors are bound by the outcome of the [bankruptcy designee's] action." *J.D.F. Enters.*, 223 B.R. at 621. "Conversely, if the claim alleges particularized injury to the assets of a creditor, then the creditor has standing to bring suit." *In re Am. Cartage*, 438 B.R. at 14.

Here, Plaintiff's alleged harm is his inability to access the assets he deposited with Celsius that are subject to the Pause and the ongoing bankruptcy proceedings. (*See* Am. Compl. ¶¶ 14, 16.) The Amended Complaint makes clear that this alleged harm is not particular to Plaintiff. Indeed, as is evidenced by the scant allegations in the Amended Complaint, "[Defendants] have . . . thousands of customers in Massachusetts, including the plaintiff, [and] 1.7 Million customers worldwide." (*Id.* ¶ 6.) Moreover, the Pause "effectively depriv[ed]" all Celsius users of their funds, not just Plaintiff (*id.* ¶ 14); Mashinsky's alleged withdrawals of a combined $27 million in crypto

assets from custodial accounts affected the assets of all Celsius customers[4] (*id*. ¶¶ 17-18); and Mashinsky's alleged misrepresentations regarding "the true condition of the company" were purportedly made to all creditors, including but not limited to Plaintiff (*id*. ¶ 19). Thus, it is clear that the harm alleged by Plaintiff is not unique to him.

The fact that Plaintiff's claims are general rather than particularized is underscored by a review of the UCC Complaint, which asserts claims against Defendants "derivatively on behalf of and as the representative of the Debtors' estates." (UCC Compl. at ¶ 2.) Both Plaintiff and the UCC rely on: (i) alleged misrepresentations by Defendants regarding Celsius's financial stability (*compare* Am. Compl. ¶ 19, *with* UCC Compl. ¶¶ 116-17); (ii) customers' purported reliance on Defendants' alleged misrepresentations (*compare* Am. Compl. ¶ 37, *with* UCC Compl. ¶¶ 138, 147); (iii) Defendants' alleged withdrawal of funds from custodial accounts (*compare* Am. Compl. ¶ 17, *with* UCC Compl. ¶¶ 121-22, 126, 199); and (iv) customers' inability to withdraw their assets due to the Pause (*compare* Am. Compl. ¶ 14, *with* UCC Compl. ¶¶ 16, 129). In other words, Plaintiff's claims mirror those of all unsecured creditors of Celsius; they are not particular to him.

In sum, Plaintiff's claims allege general harm to the Celsius estate and so can only be brought in the bankruptcy by the UCC. Plaintiff does not have standing to independently assert those claims in this forum and his claims must therefore be dismissed.

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF AS TO ANY OF HIS CLAIMS AGAINST MASHINSKY

In the alternative, each of the claims asserted against Mashinsky in the Amended Complaint should be dismissed because it falls well short of meeting the minimum pleading requirements necessary to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a

---

[4] Plaintiff's allegations in this regard are conclusory and there is no evidence that either Mashinsky or Leon withdrew any creditors' assets prior to the Pause.

complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[a] pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do." *Id.* at 678.

Where, as here, Plaintiff alleges fraud, the Amended Complaint must, in addition, satisfy Rule 9(b)'s heightened pleading standard by alleging "the who, what, where, and when of the allegedly false or fraudulent representation [and] must also identify the basis for inferring scienter by setting forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." *Hosseini v. Capital One, N.A.*, 217 F. Supp. 3d 441, 451 (D. Mass. 2016).[5]

### A.      Plaintiff Fails to State a Claim for Unjust Enrichment

Under Massachusetts law, "[t]o succeed on a claim for unjust enrichment, a plaintiff must show: (1) a benefit conferred upon defendant by plaintiff; (2) an appreciation or knowledge by defendant of the benefit; and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value." *Biltcliffe v. CitiMortgage, Inc.*, 952 F. Supp. 2d 371, 380 (D. Mass. 2013), *aff'd*, 772 F.3d 925 (1st Cir. 2014). The Amended Complaint fails entirely to plead any of the elements of unjust enrichment and therefore fails to state a claim.

---

[5] Mass. R. Civ. P. 9(b) is virtually identical to the federal rule and requires the same heightened pleading standard for fraud claims. *See Equip. & Sys. for Indus., Inc. v. Northmeadows Const. Co.*, 59 Mass. App. Ct. 931, 932 (2003); *Catarius v. Carton*, 100 Mass. App. Ct. 1130 (2022).

Further, "the existence of a contractual relationship between the parties typically precludes an unjust enrichment claim arising out of that contract." *Biltcliffe*, 772 F.3d at 931. Here, Plaintiff's unjust enrichment claim is based upon allegations concerning services provided pursuant to Celsius's Terms of Use[6] and is therefore precluded by the existence of that contract. Because Plaintiff's unjust enrichment claim seeks compensation under the Terms of Use, the claim fails for that reason as well. *Plastic Surgery Assocs., S.C. v. Cynosure, Inc.*, 407 F. Supp. 3d 59, 83 (D. Mass. 2019) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment.").

### B.    Plaintiff Fails to State a Claim for Conversion

To maintain a claim for conversion under Massachusetts law, a plaintiff must allege that: (1) the defendant intentionally and wrongfully exercised control or dominion over the plaintiff's personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; and (3) the plaintiff was damaged by the defendant's conduct. *Unum Grp. v. Loftus*, 220 F. Supp. 3d 143, 148 (D. Mass. 2016). The Amended Complaint falls well short of alleging the elements necessary to state a claim for conversion.

<u>First</u>, Plaintiff fails to allege the existence of a specific, identifiable fund of money belonging to Plaintiff and wrongfully possessed by Mashinsky, which is necessary to maintain a claim. *See Omori v. Brandeis Univ.*, 533 F. Supp. 3d 49, 56 (D. Mass. 2021) (dismissing conversion claim where plaintiff sought "a refund of only some unspecified, prorated portion of their payments rather than specific funds in which they have a possessory interest"); *Barkhordar v. Pres. & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 216 (D. Mass. 2021) (same). Instead,

---

[6] Plaintiff attaches the Terms of Use to his Amended Complaint and relies on it, thereby acknowledging that it is an enforceable contract. *See Miller v. CitiMortgage, Inc.*, 457 F. Supp. 3d 13, 16 (D. Mass. 2020) ("The Court may . . . consider on a motion to dismiss all material attached to the complaint or incorporated by reference.").

Plaintiff alleges only that Mashinsky "withdrew 10 million in cryptocurrency from custodial accounts." (Am. Compl. ¶¶ 17-18.)  Because Plaintiff fails to identify a specific, identifiable fund of assets, his conversion claim must be dismissed.

Second, the Amended Complaint does not allege that Mashinsky currently or ever exercised control or dominion over Plaintiff's assets. Instead, Plaintiff alleges that he deposited assets in a Celsius account. (*See id*. ¶ 11.) Moreover, Plaintiff alleges that the assets he deposited with Celsius remain on the platform, which precludes him from proceeding on a claim that his assets were converted. (*Id*.)

Finally, Plaintiff does not have a colorable conversion claim because, as multiple courts have held, virtual currencies are considered intangible assets that cannot be converted. *See In re Celsius Network LLC*, 647 B.R. 631, 657 (Bankr. S.D.N.Y. 2023).; *see also Ox Labs, Inc. v. BitPay, Inc.*, 848 F. App'x 795, 796 (9th Cir. 2021) (no available claim for conversion of BitCoin because the court determined that the asset was intangible); *Suski v. Marden-Kane, Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, *7 (N.D. Cal. Aug. 31, 2022) (same for Dogecoin); *Karter v. Pleasant View Gardens, Inc.*, 248 F. Supp. 3d 299, 315 (D. Mass. 2017) (quoting *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012)) ("[C]ourts throughout this district have 'consistently held that a plaintiff is not entitled to recover for conversion of intangible property.'").

## C.     Plaintiff Fails to State a Claim for Tortious Interference with Contract

A claim for tortious interference with contract requires a showing that: "(1) the plaintiff had a contract with a third party; (2) the defendant knowingly interfered with that contract by inhibiting the third party's or the plaintiff's performance; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed

by the defendant's actions." *O'Donnell v. Boggs*, 611 F.3d 50, 54 (1st Cir. 2010) (quoting *Harrison v. NetCentric Corp.*, 433 Mass. 465, 476 (2001)). Additionally, "[i]n order to prevail on a [tortious interference] claim brought against a corporate officer acting within the scope of his employment, the plaintiff must meet a heightened standard demonstrat[ing] . . . defendant's actual malice: a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Putluri v. FSSI Acquisition, Inc.*, No. CV 22-10647-NMG, 2022 WL 15523410, *2 (D. Mass. Oct. 27, 2022).

The Amended Complaint fails for the fundamental reason that it does not identify the "contracts" with which Mashinsky allegedly interfered. The vague allegation that the "acts and omissions . . . constitute intentional or negligent interference with contracts" is simply insufficient to state a claim. (*See* Am. Compl. ¶ 33.) Moreover, the Amended Complaint does not allege the improper motive or means with which Mashinsky purportedly acted to interfere with a contract, nor does it raise a single factual allegation from which Mashinsky's malice can be inferred. Plaintiff's failure to plead any facts in support of his claim for tortious interference with contract is fatal to his cause of action and the claim must be dismissed. *Eissa v. Ledvance LLC*, No. CV 21-11515-NMG, 2022 WL 3446037, at *5 (D. Mass. Aug. 17, 2022), 2022 WL 3446037, at *5 ("Bare allegations that the defendants' interference was improper in motive or means are insufficient. Rather, plaintiff must demonstrate a link between the defendants' conduct and evidence of spiteful purpose or personal hostility.").

**D.    Plaintiff Fails to State a Claim for Fraud and Misrepresentation**

As set forth herein, Plaintiff's fraud and misrepresentation claim also fails. "A claim for fraud under Massachusetts law requires the plaintiff to show that the defendant (1) made a false representation of material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiff to act on this misrepresentation, (4) which the plaintiff justifiably relied on as being

true, to [his] detriment." *Willis v. Ocwen Fin. Corp.*, 21-10026-RGS, 2022 WL 1805441, *5 (D. Mass. Jun. 2, 2022). Plaintiff's fraud and misrepresentation claim fails for two reasons: (1) the Amended Complaint fails to plead fraud with particularity, and (2) it fails to allege any of the elements of a misrepresentation claim.

First, Plaintiff fails to plead fraud with particularity as required under the heightened pleading standard. The Complaint merely alleges generically that Defendants "misrepresent[ed] the true condition of the company right up to the pause" and that "the plaintiff reasonably relied on these misrepresentations to his detriment, and did not withdraw his funds." (Am. Compl. ¶¶ 19, 37.)  Such allegations fall well short of the specificity required to plead fraud. *See Hosseini*, 217 F. Supp. 3d at 454.

Second, Plaintiff's fraud and misrepresentation claim fails for the additional reason that the Amended Complaint does not allege any of the elements of a fraud claim. Critically, the Amended Complaint does not even allege what statements were allegedly made, by whom, and how such statements were allegedly false. There are also no allegations that Mashinsky knew of the falsity of any alleged misrepresentation or that it was made with the purpose of inducing Plaintiff to act.

Further, the Amended Complaint fails to adequately allege loss causation. "To establish loss causation, 'a plaintiff must show a causal connection between the material misrepresentation and the loss.'" *Miller Inv. Trust v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 445 (D. Mass. 2018) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). Stated differently, "a plaintiff must allege that it was the *subject* of the omission or fraudulent misstatement that caused the actual loss." *Id*. The Amended Complaint contains no allegations connecting any alleged misrepresentation to any alleged loss suffered by Plaintiff.

Finally, the Amended Complaint fails to adequately allege that Plaintiff suffered any damages as a result of the alleged fraud and/or misrepresentations. Indeed, it is difficult to ascertain what harm Plaintiff is claiming to have suffered since the Amended Complaint contains nothing more than conclusory allegations that Plaintiff has been damaged by Mashinsky's alleged conduct. (Am. Compl. ¶ 16.) Although Plaintiff alleges that he deposited assets with "a current market value of $478,010.92," (*id*. ¶¶ 12-13), the Amended Complaint does not allege any decrease in value of his assets resulting from Defendants' alleged conduct. Similarly, the Amended Complaint does not contain any allegations regarding when he deposited his assets on the platform, any change in value of his assets over time, or that he has actually been deprived of any assets, an issue that remains open in the bankruptcy. The failure to plead damages is fatal to Plaintiff's fraud claim.

## CONCLUSION

For the reasons set forth above, Mashinsky respectfully requests that the Court dismiss the

Amended Complaint in its entirety.

Dated:   July 31, 2023

Respectfully submitted,

ALEXANDER MASHINSKY,

By his attorneys,

/s/ *Stephen D. Riden*
Stephen D. Riden, BBO No. 644451
Puneet Dhaliwal, BBO No. 709111
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Telephone: (617) 500-8600
Facsimile: (617) 500-8665
*sriden@beckreed.com*

Benjamin R. Allee
Corey M. Briskin
**YANKWITT LLP**
140 Grand Street, Suite 705
White Plains, New York 10601
Tel: (914) 686-1500
Fax: (914) 487-5000
*benjamin@yankwitt.com*
*corey@yankwitt.com*

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the CM/ECF system on July 31, 2023, and will be served electronically to the registered participants as identified on the Notice of Electronic Filing through the Court's transmission facilities, and that non-registered participants have been served this day by mail.

/s/ *Stephen D. Riden*

17