# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

WORCESTER SS.

                                         C.A. No. 4:32-cv-40067-MRG

| | |
|---|---|
| VALENTIN KOMAROVSKIY | ) |
| | ) |
|    Plaintiff | ) |
| | ) |
| | ) |
| | ) |
| CELSIUS NETWORK LLC, | ) |
| ALEXANDER MASHINSKY AND | ) |
| SHILOMI 'DANIEL' LEON. | ) |
|    Defendants | ) |
| | ) |

**OPPOSITION TO THE MOTION TO DISMISS**

Now comes Plaintiff, Valentin Komarovskiy (hereafter "Plaintiff") and submits his opposition to the motion to dismiss filed by Defendant Alexander Mashinsky (hereafter "Mashinsky" or "Defendant"). The motion to dismiss has been filed for alleged lack of personal jurisdiction pursuant to Rule 12(b)(2) or in the alternative for failure to state a claim pursuant to Rule 12(b)(6). At all relevant times, Mashinsky was the co-founder of Celsius Network, LLC (hereafter "Celsius" or "entity") and remained its CEO from its inception until September 2022 (during which period the cause of action arose in favor of Plaintiff). The court should deny the motion for the following reasons..

## STANDARD OF PROOF

Because Mashinsky mainly seeks dismissal under Rule 12(b)(2), the Court should assess his motion under the prima facie standard. Application of the prima facie standard is the "most typical method of resolving a motion to dismiss for lack of personal jurisdiction." *Cepeda v. Kass, 62 Mass. App. Ct. 732, 737-38 (2004)*. The Court "take[s] specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Id. at 738*. The facts are assumed to be true.

Under the prima facie standard, the Court may also consider evidence submitted by the plaintiff in the form of an affidavit. *Kleinerman v. Morse, 26 Mass. App. Ct. 819, 821 nn.4- 2 5 (1989)*. At the motion to dismiss stage, the Court need not reach conclusions about the facts. *Cepeda, 62 Mass. App. at 737-38*. Until the case reaches the fact-finding stage, "a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Id. at 738*.

> The defendants Motion can be divided into three parts, personal jurisdiction, claims derivative of the bankruptcy, and failure to state claims upon which relief can be granted. They are discussed seriatim after a brief discussion of that factual allegations.

## ALLEGATIONS IN AMENDED COMPLAINT

### PLAINTIFF SUFFERED A LOSS OF FUNDS DUE TO A UNILATERAL PAUSE IMPOSED BY CELSIUS ON WITHDRAWALS

Plaintiff's allegations as also reiterated in the motion to dismiss are that Mashinsky "co-founded Celsius, a Delaware company, in 2017 and served as its CEO from its inception until his

resignation on September 27, 2022." Celsius's primary business was to offer a platform via a website and a mobile app that allowed customers to deposit their crypto assets into an account (an "Earn Account") with Celsius and earn rewards on those deposits. On June 12, 2022, Celsius unilaterally 'paused' any withdrawals, effectively depriving the plaintiff of his funds.

## MASHINSKY WAS THE CEO OF CELSIUS WHEN THE PAUSE WAS IMPLEMENETED AND HE CONTINUED TO MISREPRESENT THE TRUE STATE OF AFFAIRS TO THE PLAINTIFF

Mashinsky was the CEO of Celsius when the pause was implemented and therefore was effectively in control of the entity's affairs while having a key role in the decision-making of the entity. Most importantly, before the pause took place, Mashinsky withdrew 10 Million in cryptocurrency, showing his prior awareness and knowledge of the incoming pause, but at the same time, he continued to misrepresent the true state of affairs to not only the Plaintiff but also other customers.

## PLAINTIFF RELIED ON HIS MISREPRESENTATIONS AND SUFFERED LOSS

Plaintiff reasonably relied on these misrepresentations made by Mashinsky to his detriment, and did not withdraw his funds, leading to Plaintiff suffering deprivation of his funds which carried a combined market value of $478,010.92. The said deprivation became more accentuated when doors of recovery of the said funds from Celsius through legal means were effectively cordoned off as approximately one month after implementing the Pause, on July 13, 2022, Celsius filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. That filing triggered an automatic stay under Section 362(a) of the Bankruptcy Code, prohibiting creditors from commencing or

continuing any proceedings against Celsius or property of the estate, and from seeking to obtain property of the estate. The series of events if seen in a logical chronology point towards a manifest intent where Mashinsky in collaboration with other actors, navigated through his scheme of fraud by using the cover of Celsius, and then declared bankruptcy to evade personal responsibility of his actions.

## **MASHINSKY IS DIRECTLY RESPONSIBLE FOR ALL ACTIONS TAKEN BY CELSIUS**

Mashinsky is directly responsible for all affairs carried out by Celsius as the CEO of Celsius in which capacity he targeted Massachusetts with a pervasive scheme of illegal deceit. This scheme involved hundreds of millions of dollars of revenue collected from people in Massachusetts, and the unilateral pause imposed later on caused devastating financial injuries to Massachusetts families. Mashinsky controlled the deceptive marketing at the core of Celsius, and he was directly involved in making misrepresentations right before they had decided to implement the 'pause'. He oversaw the operations in Massachusetts and was in charge of the employees hired by Celsius in Massachusetts to extend their scheme. This control extended beyond a formal control and involved a direct interference in each and every contract signed by the entity in Massachusetts, and all day-to-day affairs of the entity right until the point when he resigned. His resignation later on was also to cover his tracks, but the same shall not have retrospective application since Plaintiff's cause of action against the company arose in the duration when Mashinsky was the CEO; hence he must admit direct responsibility of the company's actions taken not merely by his consent but through his direct approval.

## THROUGH HIS SHCMEE OF DECIET, MASHINSKY COLLECTED MILLIONS OF DOLLARS FROM MASSACHUSETTS AND CAUSED FORSEEABLE HARM

Through the above scheme of deceit, Mashinsky was able to collect billions in deposits from Massachusetts through thousands of customers in Massachusetts. Attracted to the same scheme, Plaintiff opened an account with the entity on or about September 24, 2021. When Mashinsky decided to unilaterally pause the withdrawals, they could foresee the loss to be suffered by the thousands of families who had deposited their life savings with the entity. The foresight came from the fact that Mashinsky decided to withdraw his funds right before the pause was imposed, however, all other depositors were left hanging high and dry with their funds virtually forfeited.

## MASSACHUSETTS COURTS HAVE PERSONAL JURISDICTION OVER MASHINSKY

To prove that the court has personal jurisdiction over the Defendant, Plaintiff "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015).

To assert personal jurisdiction over a defendant, the Constitution requires that a defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) "A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." *Mass. Sch. of Law*, 142 F.3d at 34.

As far as the contention of Defendant under Rule 12(b)(6) is concerned i.e. regarding failure to state a claim, "to survive a motion to dismiss, the facts alleged, and the reasonable inferences drawn therefrom must 'plausibly suggest . . . an entitlement to relief.' *Flagg v. Alimed, Inc., 466*

5

*Mass. 23, 26-27 (2013)*, quoting *Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).*" *Coghlin Elec. Contrs., Inc. v. Gilbane Bldg. Co., 472 Mass. 549, 554 (2015)*

As aforestated, district court may exercise authority over a defendant by virtue of either general or specific jurisdiction.

**General Jurisdiction**

Court have general jurisdiction over an individual defendant when (1) the defendant is domiciled in the state in which the court sits, or (2) **when the defendant's activities in that state are "substantial" or "continuous and systematic."** *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)*.

In his motion to dismiss, Mashinsky focuses only on the first prong of general jurisdiction which discusses and hinges upon domicile, but conveniently ignores the second limb which talks about activities that are 'substantial or continuous and systematic'. From the allegations disclosed in the amended complaint and cited aforesaid, it is clear that even though Mashinsky does not satisfy the condition of domicile, but his activities in Massachusetts through the entity of which he was the CEO were substantial, as clear from the amounts collected and the number of people from whom those amounts were collected. The bankruptcy filing, of which the Court can take judicial notice, confirms substantial investors in Massachusetts. Moreover, the activities were both continuous and systematic, being part of proper contractual arrangements, hence the second limb stands satisfied to establish general jurisdiction of this court over Mashinsky.

**<u>Specific Jurisdiction</u>**

Where general jurisdiction is lacking, a district court may still have jurisdiction over a defendant if the allegations in the case "relate[] sufficiently to, or arise[] from, a significant subset of contacts between the defendant and the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).* To assess whether the court has specific jurisdiction, the court employs a tripartite test. First, "the litigation [must] result[] from alleged injuries that 'arise out of or relate to'" the defendant's in-forum activities. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Helicopteros, 466 U.S. at 414)*. Second, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.'" *Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958))*. Third, the defendant's conduct and activities much be such that it is "'reasonable . . . to require the [defendant] to defend'" a suit in the chosen forum. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting International Shoe, 326 U.S. at 317)*.

In the matter at hand, all three limbs of specific jurisdiction stand satisfied. The cause of action in favor of Plaintiff arises from a significant contact between the Defendant and the forum state in two different capacities, one indirect and another direct. The indirect contact was maintained through the legal cover of the entity of which Mashinsky was the CEO. Needless to say that Celsius was merely a platform or an umbrella when in fact all its day-to-day operations and decisions were directly controlled by Mashinsky. The direct contact was maintained when Mashinsky misrepresented to the depositors in Massachusetts the true state of affairs thereby deterring them from withdrawing their deposits, while he had himself done so at the same time.

7

Once the first limb is satisfied, the second limb is the availing of privilege to carry out activities in Massachusetts and thereby seeking protection of the local law. This limb is satisfied merely because the contractual arrangements entered into between Plaintiff (and other people of Massachusetts) and Celsius were entered under the umbrella of Massachusetts law even if no express clause providing forum was incorporated in those contractual arrangements. It is expected and given between the parties that any party making a deposit in Massachusetts and the party accepting the same, will be entitled to the protections and benefits afforded to them under the Massachusetts law.

Finally, the last limb of reasonableness also stands satisfied because Celsius is a company with deep pockets and resources, and it was understood that individual depositors shall not be able to pursue a claim against the entity or its stakeholders outside jurisdiction due to the cost and resources involved in pursuing such a claim. Hence, it would be reasonable and in all fairness for the defendant to be made to submit to the forum in which the suit is filed, considering that substantial cause of action has arisen therein.

**MASHINSKY IS ALSO SUBJECT TO JURISDICTION UNDER THREE SEPARATE AND INDEPENDENT PROVISIONS OF THE MASSACHUSETTS LONG-ARM STATUTE, AND JURISDICTION IS PROPER UNDER THE DUE PROCESS CLAUSE**

Without prejudice to the above, Mashinsky is also subject to jurisdiction because he caused tortious injury in Massachusetts through his misrepresentation about the Celsius's state of affairs, and also

through his direct interference in its affairs leading up to the pause on withdrawals and filing of bankruptcy. Section 3(c) of the Long-Arm Statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's … causing tortious injury by an act or omission in this Commonwealth." *G.L. c. 223A, § 3(c)*.

Murphy v. Erwin-Wasey provides the relevant rule about the scope of Section 3(c) "where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." *460 F.2d 661, 664 (1st Cir. 1972) (holding jurisdiction in Massachusetts was proper under Section 3(c)). Murphy explained that intentionally sending a false statement into a state is a way of acting in that state, as surely as a "gunman firing across a state line." Id. at 664.*

The Massachusetts Appeals Court considered Murphy and adopted it. See *Burtner v. Burnham, 13 Mass. App. Ct. 158, 163-64 (1982)* (out-of-state defendant who sent misleading info to Massachusetts was subject to Section 3(c) because "where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state" (*quoting Murphy, 460 F.2d at 664*))

Section 3(c) applies regardless of the method used to make the deceptive misrepresentation. *Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986)* explained: [A] fraudulent misrepresentation made in the state, whether made by a personal representative of a defendant

9

within the state or made by the defendant via mail or other communication networks, constitutes an act which confers jurisdiction under 223A, § 3(c). Section 3(c) applies to every "means of communication." *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 97 (D. Mass. 1999) ("A fraudulent misrepresentation made in the state by a foreign defendant or her agent via mail, telephone, or other means of communication constitutes an act that confers jurisdiction under section 3(c).").

## CLAIMS ARE NOT DERRIVITVE

Defendant spends a great deal of time discussing the bankruptcy of Celsius. This action is stayed against Celsius, and plaintiff is not pursuing, indeed cannot pursue, any of those claims at this time. The short answer is that the claims against the individual are not stayed. Mashinsky cannot have his cake and eat it too. If he wants to take advantage of the automatic stay, he is welcome to file bankruptcy individually. This he has not done.

## PLAINTIFF'S CLAIMS STATE CLAIMS OF WHICH RELIEF CAN BE GRANTED

Unjust enrichment. Defendant on one had argues the complaint does not set forth the elements, then argues that as a matter of law they can't state a claim based on the contact. The allegations of each count incorporate the prior paragraphs. There was a benefit conferred, plaintiff deposited his money. The defendant certainly had knowledge of the plaintiff and other investors depositing their funds. The assets were retained. The allegations are clearly set forth in the complaint. Amended Complaint ¶11 and attached contract. The contract, however, is with the

company.   Mashinsky withdrew millions of those funds just before the pause ended Complaint ¶17, circumstances which if proven would clearly be inequitable.

Conversion presents a closer question.   How does a plaintiff prove that the funds the defendant took were HIS funds.  At this stage of the proceedings, plaintiff should be permitted to conduct discovery.  And while courts have considered the question of whether conversion can lie against cryptocurrency, and have said no, this is an emerging technology and plaintiff is again entitled to discovery.

Their authority is misleading.  *Ox Labs, Inc. v. BitPay, Inc.*, 848 F. App'x 795, 796 (9th Cir. 2021) ruled that the plaintiff was not entitled to the actual coins because they were intangible, but damages were still awarded for the conversion.  It DOES NOT say there is no conversion claim!

Tortious interference.  The defendant seems to concede a claim would be stated but for the enhanced requirement of malice in these cases.   "Malice" legally does necessarily mean with spite toward the plaintiff.  It means, as defendant cites, a motive not related to the legitimate corporate interest.  It is hard to imagine a more sinister purpose than withdrawing millions just before the pause.  There is no legitimate corporate purpose to this action, and to the allegations concerning fraud.

And again, the defendants argue both ways.  Here they say plaintiff does not point to a contract, but earlier they argued it was the contract the precluded unjust enrichment.  The complaint is clearly referring to the deposit agreement(s) the plaintiff had with Celsius.

Fraud and Misrepresentation.

Plaintiff believes the pleadings are sufficient to put defendant on notice of the allegations, but to the extent that fraud is not pled with particularity, plaintiff requests leave to file an amended complaint.

As to the elements of the claim, the defendant lied about the conditions of the company to induce investors to "hang" in there, at the very same time he was withdrawing millions of his own money. In reliance on those representations, plaintiff did not withdraw his funds, and now can't. Although defendant is correct that we don't know if the damage is permanent yet, plaintiff has already been deprived of the use of the funds. Again to the extent this is not clear from the complaint, plaintiff seeks leave to file an amended complaint.

## **CONCLUSION**

In view of the foregoing and for the reasons stated above, it is clear that Plaintiff's amended complaint not only provides proper personal jurisdiction to this court over Mashinsky, but also states a claim and entitlement to relief, hence motion to dismiss under Rule 12(b)(2) and 12(B)(6) should be denied, or such other or further relief granted including granting leave to file an amended complaint, or/and or staying the matter pending the conclusion of the bankruptcy..

Respectfully submitted,

__/s/Robert  H .Bowen_____
Robert H. Bowen BBO # 556674
BowenBowen PC
50 Main Street
Lunenburg, Massachusetts 01462
(978) 582-0050
(978) 582-5500  FAX
rob@bowenbowen.com

Dated:  _____September 5, 2023_____